**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STANDARDAERO AVIATION HOLDINGS, INC., | |
| Plaintiff, | 22 Civ. 7515 |
| -against- | **COMPLAINT** |
| SIGNATURE AVIATION LIMITED f/k/a SIGNATURE AVIATION PLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff StandardAero Aviation Holdings, Inc. ("StandardAero"), by and through its attorneys, Latham & Watkins LLP, for its complaint against Defendant Signature Aviation Limited f/k/a Signature Aviation plc ("Signature"), allege upon personal knowledge as to their own acts, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for breach of contract resulting from Signature's failure to make millions of dollars of capital expenditures that it promised StandardAero it would make.

2.      On February 16, 2021, StandardAero and Signature entered into a Sale and Purchase Agreement (the "Purchase Agreement", attached as Exhibit A).  The Purchase Agreement[1] sets forth the terms under which Signature would sell its engine repair and overhaul (ERO) business to StandardAero.  The sale was consummated on July 1, 2021.

3.      Among other terms, the Purchase Agreement provides that Signature was required to make, or to cause the Purchased Companies to make, certain capital expenditures for

---

[1] All capitalized terms used but not defined herein shall have the meanings given to them in the Purchase Agreement.

the ERO business prior to the consummation of the sale in accordance with a capital expenditures budget set forth on Schedule 6.01(c)(xix) to the Purchase Agreement.

4.    Despite voluntarily entering into the Purchase Agreement and agreeing to comply with the capital expenditures budget, Signature failed to do so.  In fact, of the $10,216,042 Signature agreed to make in capital expenditures, it only expended $3,075,503 in capital investments.  That is $7,137,539 below the agreed-upon amount.

5.    What is more surprising than Signature's outright failure to comply with the plain terms of the Purchase Agreement is that on December 14, 2021, StandardAero formally noticed Signature of its material breach of the Purchase Agreement, specifying that Signature failed to make the $7,137,539 in capital expenditures as required under Section 6.01(c)(xix) of the Purchase Agreement and submitting an indemnification claim.  Signature's only response was to flatly deny—without explanation—that it had breached the Purchased Agreement.  Effectively conceding the opposite, Signature did not deny that it had failed to make, or cause the Purchased Companies to make, the required capital expenditures under Section 6.01(c)(xix) of the Purchase Agreement.  Neither did Signature attempt to argue that the Purchase Agreement was invalid or unenforceable (it is not), nor argue that StandardAero had not performed all its obligations under the Purchase Agreement (it had).  Instead, Signature claimed that StandardAero had not suffered any Losses from the breach and that it owed no part of the $7,137,539 in capital expenditure shortfall to StandardAero.

6.    But StandardAero *has suffered* and *continues to suffer* Losses from Signature's breach.  As StandardAero communicated to Signature on a January 21, 2022 call, Signature's breach of the Purchase Agreement created a cash flow requirement for StandardAero that it otherwise would not—and should not—have had.

7.      On February 14, 2022, StandardAero made one final, good faith effort to recover its Losses from Signature's breach of the Purchase Agreement without having to resort to litigation.  That effort was rebuffed.  Signature continues to refuse to acknowledge its breach of the Purchase Agreement and the Losses it owes to StandardAero as a result.

8.      Accordingly, StandardAero has been forced to seek in this Court both a declaration that Signature is required to indemnify StandardAero under the Purchase Agreement in the amount of all Losses suffered because of the breach, and an award of those Losses.

## PARTIES

9.      Plaintiff StandardAero is a Delaware corporation with a principal place of business at 6710 N. Scottsdale Road, Suite 250, Scottsdale, AZ 85253.  StandardAero is a maintenance, repair, and overhaul provider serving business aviation, commercial aviation, military aviation, and industrial power customers.  For purposes of diversity under 28 U.S.C. § 1332(a), StandardAero is a citizen of Delaware and Arizona.

10.     Upon information and belief, Defendant Signature is a private limited company incorporated in England and Wales with company number 00053688, with its principal place of business at 105 Wigmore Street, London, W1U 1QY, England.  For purposes of diversity under 28 U.S.C. § 1332(a), Signature is a citizen of the United Kingdom, a foreign state.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the action is brought by a citizen of a state within the United States against a citizen of a foreign state, and the matter in controversy exceeds the sum or value of $75,000 exclusive of costs and interest.

12.     Venue is proper in this district pursuant to Section 12.13 of the Purchase Agreement, wherein Signature has agreed that this Court is the proper venue to resolve this dispute,

and has waived any objection it may have had or may have that this Court is an improper or inconvenient forum for the resolution of this dispute.

13.    Signature also agreed in Section 12.12 of the Purchase Agreement that this dispute "shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without giving effect to any Law or rule that would cause the Laws of any jurisdiction other than the State of New York to be applied."

## GENERAL ALLEGATIONS

### A.    The Purchase Agreement

14.    On February 16, 2021, the Parties executed the Purchase Agreement.  The Purchase Agreement is a contract between Signature, as Seller, and StandardAero, as Buyer, for the sale of all of the outstanding equity interests in the Companies to StandardAero, in exchange for the Purchase Price paid by StandardAero.  The sale was consummated on July 1, 2021.

15.    Upon information and belief, Signature was advised by competent counsel and Signature represented itself as having the legal capacity to enter into the Purchase Agreement. The terms of the Purchase Agreement were negotiated at arm's length and mutually agreed upon by the Parties.

16.    StandardAero has complied with all applicable terms and conditions of the Purchase Agreement.

17.    Section 6.01(c) of the Purchase Agreement sets forth terms concerning the "Conduct of Business Before the Closing."  Specifically, in Section 6.01(c)(xix), Signature agreed to the following terms:

> [D]uring the Pre-Closing Period, unless Buyer otherwise consents in advance (which consent shall not be unreasonably withheld, conditioned or delayed), Seller shall, and shall cause each of the Purchased Companies (and, as applicable, Seller's other Affiliates) to . . . (c) not do any of the following with respect to the Purchased

Companies or the Business . . . (xix) (A) fail to make capital expenditures in all material respects in accordance with the capital expenditures budget set forth on Schedule 6.01(c)(xix) . . . .

18.     Pursuant to Schedule 6.01(c)(xix), Signature's aggregate capital expenditures budget with respect to the Purchased Companies was approximately $10,216,042.

19.     StandardAero, as Buyer, did not otherwise consent for Signature, as Seller, to fail to make or cause to be made capital expenditures under Section 6.01(c)(xix).

20.     At closing, Signature delivered to StandardAero a certificate in which Signature certified that it had complied in all material respects with Section 6.01(c), including that Signature had made or had caused to be made capital expenditures under Section 6.01(c)(xix).

21.     Signature did not make or did not cause to be made capital expenditures in all material respects in accordance with the capital expenditures budget set forth on Schedule 6.01(c)(xix), as it had agreed to do under Section 6.01(c)(xix).  As a result, StandardAero was (a) deprived of the benefits of those capital expenditures in the Purchased Companies that would have been realized if the requisite amount had been invested and (b) required to invest the deficient amount in capital expenditures itself.

22.     Section 11.02 of the Purchase Agreement sets forth terms concerning indemnification by Seller (Signature) in favor of Buyer (StandardAero).  Specifically, in Section 11.02(a)(i), Signature agreed to the following terms:

From and after the Closing, and subject to the terms of this Agreement, Seller shall indemnify and hold harmless Buyer and its Affiliates (which following the Closing shall include the Purchased Companies), and their respective Representatives, successors and assigns (collectively, the 'Buyer Indemnified Parties') against, and reimburse any Buyer Indemnified Party for, all Losses that such Buyer Indemnified Party may suffer or incur, or become subject to, that result from, arise out of or are attributable to: (i) any breach or failure by Seller to perform any of the covenants or agreements contained in this Agreement[.]

23.     The Purchase Agreement defines Losses as "all losses, Taxes, damages, costs, expenses, and liabilities actually suffered or incurred (including reasonable attorneys' fees)." *See* Ex. A, at A-9.

24.     Section 11.04 of the Purchase Agreement sets forth terms concerning notification of indemnification claims.  Specifically, Section 11.04(a) states in relevant part:

> [A] Person that may be entitled to be indemnified under this Agreement (the "Indemnified Party") shall promptly notify the Party liable for such indemnification (the "Indemnifying Party") in writing of any pending or threatened claim, demand or circumstance that the Indemnified Party has determined has given or would reasonably be expected to give rise to a right of indemnification under this Agreement . . . describing in reasonable detail the facts and circumstances with respect to the subject matter of such claim, demand or circumstance; provided, however, that the failure to provide such notice shall not release the Indemnifying Party from any of its obligations under this Article XI except to the extent the Indemnifying Party is actually and materially prejudiced by such failure, it being understood that notices for claims in respect of a breach of a covenant or agreement must be delivered before the expiration of any applicable survival period specified in Section 11.01 for such covenant or agreement.

25.     Section 11.01 of the Purchase Agreement sets forth terms concerning survival periods for purposes of indemnification claims.  Specifically, Section 11.01 states in relevant part:

> The covenants and agreements contained in this Agreement which by their terms do not apply and do not contemplate performance after the Closing shall survive for six (6) months following the Closing Date for purposes of making claims for indemnification thereunder pursuant to this Article XI.

**B.     StandardAero's December 14, 2021 Indemnification Claim Notice**

26.     On December 14, 2021 (i.e., less than six (6) months after the Closing occurred on July 1, 2021), StandardAero provided notice "pursuant to Article XI of the Purchase

Agreement" of "an indemnification claim under such provisions." StandardAero's Indemnification Claim Notice is attached to this complaint as Exhibit B.

27.    StandardAero sent the Indemnification Claim Notice to Signature because of Signature's failure "to cause the applicable Purchased Companies to make capital expenditures in accordance with the capital expenditures budget set forth on Schedule 6.01(c)(xix) to the Purchase Agreement in breach of Seller's obligations under Section 6.01(c)(xix) of the Purchase Agreement."

28.    Specifically, Signature's "aggregate capital expenditures budget with respect to the Purchased Companies for the period from January 1, 2021 through June 30, 2021 [(i.e., the day prior to the consummation of the sale on July 1, 2021)] was approximately $10,216,042," and "Seller actually made capital expenditures with respect to the Purchased Companies during such period in an aggregate amount of only approximately $3,078,503."

29.    StandardAero sent its Indemnification Claim Notice to Seller "pursuant to Section 11.02(a)(i) of the Purchase Agreement," and notified Signature of Losses "in the aggregate amount equal to (A) $7,137,539, representing the difference between the Budgeted Spend and the Actual Spend, plus (B) any and all other Losses resulting from, arising out of or attributable to the Subject Breach."

30.    StandardAero attached a detailed table to its Indemnification Claim Notice that demonstrated the $7,137,539 difference between Budgeted Spend and Actual Spend.

31.    Accordingly, StandardAero's Indemnification Claim Notice accords with the requirements of Article XI of the Purchase Agreement.

### C.      Signature's January 4, 2022 Response

32.      On January 4, 2022 Signature responded to the Indemnification Claim Notice.  In its response, Signature "denie[d] that any Alleged Breach occurred."  Signature's response is attached to this complaint as Exhibit C.

33.      Signature, however, neither stated that it had made, or had caused the applicable Purchased Companies to make, capital expenditures in accord with the capital expenditures budget set forth on Schedule 6.01(c)(xix) to the Purchase Agreement, nor otherwise explained how its conduct was in accord with the Purchase Agreement.

34.      Signature also cursorily (and spuriously) asserted that, even if Signature had breached the Purchase Agreement, StandardAero has not suffered any Loss from that breach and that Signature did not owe the Claimed Amount set forth in the Indemnification Claim Notice. Again, Signature did not explain its position with respect to either assertion.

35.      Lastly, Signature further cursorily (and spuriously) asserted that StandardAero's December 14, 2021 Indemnification Claim Notice did not constitute prompt notice under Section 11.04 of the Purchase Agreement, and did not provide "reasonable detail of the underlying facts and circumstances sufficient to determine whether the Alleged Breach occurred, or more specifically, whether any Losses were incurred in connection therewith."  Notably, Signature did not assert any other failures of StandardAero to comply with the applicable terms and conditions of the Purchase Agreement.

### D.      January 21, 2022 Call

36.      On January 21, 2022, Mike Scott and Brent Fawkes from StandardAero hosted a teleconference with Shawn Fallon, Jennifer Chase, Chris de Jongh, and Janessa Wells from Signature.  StandardAero's purpose for the call was to discuss Signature's failure to make

capital expenditures from a business perspective and the resulting Losses that were owed to StandardAero.

37.     On the call, Signature acknowledged that StandardAero's accounting records—demonstrating that Signature had not made, or had not caused to be made, capital expenditures in accord with the capital expenditures budget set forth on Schedule 6.01(c)(xix) to the Purchase Agreement—were correct.

38.     Despite acknowledging that they had not spent the required capital expenditures, Signature insisted that StandardAero had not been harmed by Signature's failure.

39.     StandardAero again made clear that Signature had not fulfilled the terms of the Purchase Agreement, noting that the capital expenditures in Schedule 6.01(c)(xix) to the Purchase Agreement had become a cash flow requirement for StandardAero (instead of such capital expenditures being borne by Signature as provided in the Purchase Agreement).

40.     Signature ended the call without changing their position, and without agreeing to fulfill their obligations under Section 6.01(c)(xix) of the Purchase Agreement.  On the call, Signature did not state that StandardAero's Indemnification Claim Notice was not timely sent. And Signature did not dispute whether the Indemnification Claim Notice provided sufficient detail concerning Signature's breach, or the Losses resulting from that breach.

### E.     StandardAero's February 14, 2022 Letter

41.     On February 14, 2022, StandardAero again wrote to Signature.  The letter is attached to this complaint as Exhibit D.

42.     StandardAero reiterated Signature's failure to satisfy its obligations under Section 6.01(c)(xix) of the Purchase Agreement, its acknowledgment of that failure in its January

4, 2022 letter and the January 21, 2022 phone call, and that Signature had not remedied its breach of the Purchase Agreement.

43.     StandardAero asked once again for Signature to satisfy its indemnity claim as described in StandardAero's Indemnification Claim Notice, hoping to avoid unnecessary litigation.  But StandardAero noted that, if Signature did not do so, it would be "left with no alternative but to file a lawsuit against Seller in the U.S. District Court for the Southern District of New York pursuant to Section 12.13 of the Purchase Agreement."

44.     To date, Signature has not satisfied StandardAero's indemnity claim as described in StandardAero's Indemnification Claim Notice.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

45.     StandardAero realleges and incorporates by reference the allegations in paragraphs 1 through 44 as set forth herein.

46.     StandardAero and Signature are parties to the Purchase Agreement, which was entered into on February 16, 2021.  The Purchase Agreement is a valid and enforceable contract that governs the rights, duties, and obligations of the Parties.

47.     StandardAero has performed all of its obligations under the Purchase Agreement, including but not limited to its obligation to notify Signature of its demand for indemnification, to reasonably describe Signature's breach of the Purchase Agreement, and to reasonably describe the Losses StandardAero has suffered and continues to suffer as required under Section 11.04 of the Purchase Agreement.

48.     Signature failed to make capital expenditures in accord with Section 6.01(c)(xix) of the Purchase Agreement in breach of the Purchase Agreement.  Signature has failed

to comply with its indemnification obligations, in further breach of Article XI of the Purchase Agreement.

49.     As a direct and foreseeable result of Signature's breach, StandardAero has suffered damages in the amount of $7,137,539, the difference between the Budgeted Spend and the Actual Spend, plus any and all other Losses resulting from, arising out of or attributable to Signature's breach of the Purchase Agreement.

50.     StandardAero is entitled to recovery of a total amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

51.     StandardAero realleges and incorporates by reference the allegations in paragraphs 1 through 44 as set forth herein.

52.     StandardAero and Signature are parties to the Purchase Agreement, which was entered into on February 16, 2021.  The Purchase Agreement is a valid and enforceable contract that governs the rights, duties, and obligations of the Parties.

53.     The Purchase Agreement contains an implied duty of good faith and fair dealing.  That covenant, among other things, contemplates a pledge by both parties that one will not do anything that will destroy the right of the other to receive the fruits of the contract.

54.     Despite acknowledging that it has not satisfied its obligations under Section 6.01(c)(xix) of the Purchase Agreement, Signature continues to refuse to make StandardAero whole for the payments that Signature was required to make (but did not make) under Section 6.01(c)(xix).

55.     By arbitrarily asserting that StandardAero has not been harmed by Signature's breach and by Signature's resulting refusal to satisfy StandardAero's indemnity claim, Signature breached the implied covenant of good faith and fair dealing.

56.     StandardAero is entitled to recovery of a total amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT**

57.     StandardAero realleges and incorporates by reference the allegations in paragraphs 1 through 44 as set forth herein.

58.     StandardAero and Signature are parties to the Purchase Agreement, which was entered into on February 16, 2021.  The Purchase Agreement is a valid and enforceable contract that governs the rights, duties, and obligations of the Parties.

59.     StandardAero has upheld its contractual obligations in all respects.

60.     A justiciable controversy presently exists between StandardAero and Signature with respect to whether StandardAero suffered damages such that Signature is obligated to satisfy StandardAero's indemnity claim.

61.     StandardAero takes the position that it has suffered Losses well in excess of $7 million as a result of Signature's breach of the Purchase Agreement, and that it is entitled to indemnification of the total amount of Losses from Signature.

62.     Signature takes the position that StandardAero has not suffered Losses and is not entitled to indemnification.

63.     Resolution of this controversy is necessary to define the Parties' rights and obligations under the Purchase Agreement.

64.     Accordingly, StandardAero respectfully requests a declaration that Signature is required to satisfy StandardAero's indemnity claim under Section 11.02(a)(i) of the Purchase Agreement.

**WHEREFORE**, Plaintiff prays for the following relief:

1.      On the First Cause of Action, an award of damages in favor of StandardAero with respect to Signature's breach of its obligations to make, or cause the Purchased Companies to make, capital expenditures in accordance with the capital expenditures budget set forth in Schedule 6.01(c)(xix) to the Purchase Agreement, with the ultimate amount of damages reasonably expected to be well in excess of $7,137,539.

2.      On the Second Cause of Action, an award of damages in favor of StandardAero with respect to Signature's breach of its obligations to make, or cause the Purchased Companies to make, capital expenditures in accordance with the capital expenditures budget set forth in Schedule 6.01(c)(xix) to the Purchase Agreement, with the ultimate amount of damages reasonably expected to be well in excess of $7,137,539.

3.      On the Third Cause of Action, a declaration that Signature is required to satisfy StandardAero's indemnity claim in accordance with the Purchase Agreement's terms.

4.      An award of StandardAero's attorneys' fees and costs associated with Signature's failure to comply with its obligations under the Purchase Agreement.

5.      That the Court order such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, StandardAero demands trial by jury in this action of all issues so triable.

Dated: September 2, 2022
　　　　New York, New York

**LATHAM & WATKINS LLP**

By:　　/s/ Elizabeth A. Morris

　　　　Elizabeth A. Morris
　　　　1271 Avenue of the Americas
　　　　New York, NY 10020
　　　　Tel:  (212) 906-1200
　　　　E-mail address: elizabeth.morris@lw.com

　　　　Allen M. Gardner (*pro hac vice
　　　　forthcoming*)
　　　　Henry Zaytoun III (*pro hac vice
　　　　forthcoming*)
　　　　555 Eleventh Street, NW
　　　　Suite 1000
　　　　Washington, D.C. 20004-1304
　　　　Tel: (202) 637-2200
　　　　allen.gardner@lw.com
　　　　henry.zaytoun@lw.com


　　　　*Attorneys for Plaintiff*