UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STANDARDAERO AVIATION HOLDINGS, INC.,

                                    Plaintiff,

            -against-

SIGNATURE AVIATION LIMITED
f/k/a SIGNATURE AVIATION PLC,

                                    Defendant.

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____              │
│ DATE FILED: _01/11/2024__            │
└─────────────────────────────────────┘
```

22 Civ. 7515 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, StandardAero Aviation Holdings, Inc., brings this action against Defendant, Signature Aviation Limited, alleging that Defendant failed to make capital expenditures required by a contract between the two companies. Plaintiff asserts causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and seeks a declaratory judgment. Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Def. Mot., ECF No. 29; *see* Def. Mem., ECF No. 30. For the reasons stated below, Defendant's motion is GRANTED IN PART and DENIED IN PART.[1]

**BACKGROUND[2]**

Plaintiff, a Delaware corporation headquartered in Arizona, is a "maintenance, repair, and overhaul provider" for "aviation[] and industrial power customers." Compl. ¶ 9, ECF No. 1. Defendant, a foreign company headquartered in London, England, *id.* ¶ 10, previously operated an "engine repair and overhaul . . . business," *id.* ¶ 2. Pursuant to a contract dated

---

[1] Plaintiff's motion for oral argument, ECF No. 35, is DENIED.

[2] The following facts are taken from the complaint and documents attached to the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 398 (2d Cir. 2015).

February 16, 2021 (the "Agreement"), Defendant agreed to sell its engine repair and overhaul business to Plaintiff.  *Id.*  The sale was consummated on July 1, 2021.  *Id.*

The parties dispute whether the Agreement required Defendant to make capital expenditures between January 1 and June 30, 2021 (the "Required Capital Expenditures")— roughly the period between the execution of the Agreement and the closing.  Defendant spent $3,078,503 on capital expenditures during this period.  *Id.* ¶ 28.  Plaintiff claims, however, that the Required Capital Expenditures were $10,216,042.  *Id.* ¶ 18.  Defendant argues that they were zero.  Def. Mem. at 1–2.

Plaintiff attached the Agreement as an exhibit to its complaint.  *See* ECF Nos. 1-1, 52, 53-1 to -3.  The Agreement consists of twelve articles, each of which is subdivided into sections.  *See* ECF No. 53-1 at 3–7.[3]  An addendum to the Agreement contains schedules related to certain sections of the Agreement.  *See* ECF No. 53-3 at 3.

Section 6.01(c) of the Agreement delineates the manner in which Defendant was to operate the business prior to the sale's consummation.  Compl. ¶ 17.  Defendant agreed to "make capital expenditures in all material respects in accordance with the capital expenditures budget set forth on Schedule 6.01(c)(xix)."  *Id.* (citing Agreement § 6.01(c)(xix), ECF No. 53-1 at 44, 47).  Schedule 6.01(c)(xix) is a bullet point that says "None."  *See* ECF No. 53-3 at 162. The next page, however, is titled "Exhibit 6.01(c)(xix)," and is followed by a five-page table titled "2021 Capex Budget" (the "Capital Expenditures Budget").  *Id.* at 163–68.

---

[3] For citations to the Agreement, ECF Nos. 53-1 to -3, the Court utilizes the page numbers generated by ECF, not the page numbers within the Agreement.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  The Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  That tenet, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  In deciding a Rule 12(b)(6) motion, the Court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that Plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

**DISCUSSION**

I.   <u>Breach of Contract</u>

A.  Legal Standard

Under New York law, a claim for breach of contract requires "(1) the existence of an agreement, (2) adequate performance by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *N.Y.C. Transit Auth. v. Express Scripts, Inc.*, 588 F. Supp. 3d 424, 434 (S.D.N.Y. 2022) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).  A court

may dismiss a breach-of-contract claim at the motion to dismiss stage "only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Comm'cns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Id.* (citation omitted). Although a court is not obligated to accept the complaint's allegations as to how to construe a contract, any contractual ambiguities should be "resolve[d] . . . in favor of the plaintiff on a motion to dismiss." *Id.* (citation omitted); *accord Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

"[T]he fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citation omitted). A contract is ambiguous if "it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* To decide whether a provision is ambiguous, the Court should look "within the four corners of the document, not to outside sources." *Id.* (citation omitted). "[W]ords and phrases should be given their plain meaning, and a contract should be construed so as to give full meaning and effect to all of its provisions." *Orchard Hill*, 830 F.3d at 157 (cleaned up). A contract is not ambiguous "simply because the parties urge different interpretations." *Novartis Pharma AG v. Incyte Corp.*, 520 F. Supp. 3d 514, 525 (S.D.N.Y. 2021) (citation omitted). However, "if the contract is ambiguous, then relevant extrinsic evidence should be admitted and considered by the factfinder to resolve the ambiguity." *Ezrasons, Inc. v. Travelers Indem. Co.*, No. 22-766, 2023 WL 8883036, at *5 (2d Cir. Dec. 26, 2023).

B.  Application

Section 6.01(c)(xix) of the Agreement establishes the Required Capital Expenditures by explicitly referencing Schedule 6.01(c)(xix), which says "[n]one."  Defendant argues that "none" means that Defendant had no obligation to make any capital expenditures.  *See* Def. Mem. at 10 (citing Agreement § 8.09, ECF No. 53-1 at 82; Schedule 8.09, ECF No. 53-3 at 176).  Plaintiff concedes that the word "none" usually indicates "that there is no schedule that corresponds to a specific contract provision."  Pl. Opp. at 9, ECF No. 33.  But, it claims that, in this instance, the meaning of "none" is unclear.  *Id.* at 10–11.  The Court agrees with Plaintiff.

In contract interpretation, "[w]ords of general description should generally yield to words that are more specific."  *Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001).  And New York law "disfavor[s] contract interpretations that render provisions of a contract superfluous."  *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002).  Schedule 6.01(c)(xix) is followed by an exhibit containing the Capital Expenditures Budget.  Pl. Opp. at 9.  Defendant's interpretation would both render the exhibit superfluous and cause the more general term "none" to override the specific numbers contained in the Capital Expenditures Budget.  *See Watson v. Suffolk Fed. Credit Union*, No. 20 Civ. 1531, 2022 WL 523543, at *3–4 (E.D.N.Y. Feb. 22, 2022) (holding that an interpretation that creates tension between an agreement and its schedule is not "unambiguously" required).

Defendant argues that the Capital Expenditures Budget is not superfluous because it is explicitly referenced elsewhere in the Agreement—in Schedule 6.01(c)(vii).  Def. Reply at 6–7, ECF No. 40.  Section 6.01(c)(vii) limits Defendant's ability to spend during the closing period. *See* Agreement § 6.01(c)(vii), ECF No. 53-1 at 45.  Schedule 6.01(c)(vii) lists exceptions to this limit and references Exhibit 6.01(c)(xix), which contains the Capital Expenditures Budget.  *See*

ECF No. 53-3 at 158.  Defendant contends that, as a result, the Agreement permits it to spend in

accordance with the Capital Expenditures Budget—but does not require it to do so.  Def. Reply

at 7.

  The Court cannot adopt Defendant's interpretation based on the Agreement alone.  First,

Defendant's interpretation does not account for the fact that the exhibit containing the Capital

Expenditures Budget is numbered 6.01(c)(xix), rather than 6.01(c)(vii), the section of the

Agreement that limits Defendant's expenditures.  *See* Pl. Sur-Reply at 4–5, ECF No. 41-1.[4]

"Captions are relevant to contract interpretation."  *Int'l Multifoods*, 309 F.3d at 85.  The fact

that the Capital Expenditures Budget exhibit shares the section number of the Agreement that

references a "capital expenditures budget"—6.01(c)(xix)—supports the conclusion that the two

are linked.

  Placing weight on the shared numbers is consistent with the rest of the Agreement.  *See*

*Orchard Hill*, 830 F.3d at 157 (requiring courts to examine terms "within the context of the

entire integrated agreement").  In certain sections, the Agreement explicitly states that a

schedule is attached.  *See, e.g.*, Agreement § 4.04(a), ECF No. 53-1 at 18 ("The authorized and

issued and outstanding shares . . . are as set forth on Schedule 4.04(a).");  Def. Mem. at 9–10.

But, in other instances, a schedule shares a section's number without being explicitly mentioned

in the Agreement.  For example, in Section 4.14(f), Defendant stipulates that its "Employee

Plans" have been maintained in accordance with all applicable laws.  Agreement § 4.14(f), ECF

No. 53-1 at 28.  The section does not reference a schedule, but a corresponding schedule exists.

In Schedule 4.14(f), Defendant discloses two legal violations that it is in the process of self-

---

[4] Plaintiff's motion to file a sur-reply, ECF No. 41, is GRANTED.

correcting and for which it remains liable.  ECF No. 53-3 at 91 (containing Schedule 4.14(f)).[5]
Such inconsistencies between the language of the section and the schedule indicate that the
parties intended the schedule to modify the Agreement, and used the shared numbers to do so in
lieu of an explicit reference.  To interpret otherwise would render Schedule 4.14(f) and the other
implied references superfluous.  *See Int'l Multifoods*, 309 F.3d at 86.

  Second, Defendant's interpretation creates tension between two subsections of the
Agreement—namely, Sections 6.01(c)(vii) and 6.01(c)(xix)(B).  Under Defendant's
interpretation, the former provision permits Defendant to spend during the closing period in
accordance with the Capital Expenditures Budget, but the latter provision prohibits it from
spending more than $500,000 on capital expenditures during the closing period—except as
specified in Schedule 6.01(c)(xix).  Agreement § 6.01(c)(xix), ECF No. 53-1 at 44, 47.
Defendant contends that Schedule 6.01(c)(xix) unambiguously states "none" and does not
include the Capital Expenditures Budget.  If so, Defendant's capital expenditures would have
been capped at $500,000—a limit that neither party references and that Defendant surpassed.
*See* Compl. ¶ 28.

  Third, Plaintiff has adduced evidence that the inclusion of the word "none" is a drafting
error.[6]  *See Wells Fargo Bank N.A. v. Sovereign Bank, N.A.*, 44 F. Supp. 3d 394, 407 (S.D.N.Y.
2014) ("Under New York law, the doctrine of scrivener's error allows contracts to be reformed

---

[5] Similar implied references exist between Section 4.14(c) and Schedule 4.14(c), ECF No. 53-1 at 27–28; ECF No. 53-3 at 91; and Section 4.14(j)(1) and Schedule 4.14(j)(1), ECF No. 53-1 at 28–29; ECF No. 53-3 at 91.

[6] Although Defendant argues that Plaintiff was required to plead a scrivener's error in its complaint, Def. Reply at 6, courts make such a finding, often on behalf of defendants, without requiring specific pleading.  *See Deutsch v. Pressler, Felt & Warshaw, LLP*, 535 F. Supp. 3d 322, 327 (S.D.N.Y. 2021); *Washington v. NYC Medical Prac., P.C.*, No. 18 Civ. 9052, 2021 WL 918753, at *5 (S.D.N.Y. Mar. 10, 2021); *see also 82-90 Broadway Realty Corp. v. N.Y. Supermarket, Inc.*, 154 A.D.3d 797, 799 (N.Y. App. Div. 2017) ("In the absence of a claim for reformation, courts may as a matter of interpretation carry out the intentions of the parties by transposing, rejecting, or supplying words to make the meaning of the contract more clear." (cleaned up)).

when there is a mistake in the writing that memorialized the contract." (citation omitted)).

Section 6.01(c) has subsections numbering up to (xxi), yet the corresponding schedule only

contains subsections numbering up to (xix).  In other words, two subsections appear to be

missing from the schedule.[7]  *Compare* Agreement § 6.01(c), ECF No. 53-1 at 44–47 *with* ECF

No. 53-3 at 158–62.  Further, at least one drafting error plainly exists in the Agreement.  *See*

Agreement § 4.15(p), ECF No. 53-1 at 33 (explicitly referencing a nonexistent Schedule 4.15(p)

rather than, as likely based on the subject matter, Schedule 4.15(q)).

The Court, therefore, cannot determine the parties' intentions regarding the Required

Capital Expenditures based on the four corners of the Agreement.  *See Joseph v. Gnutti Carlo*

*S.p.A.*, No. 15 Civ. 8910, 2016 WL 4764924, at *5 (S.D.N.Y. Sept. 12, 2016) (holding that an

"unclear . . . connection" between an agreement and its schedules precludes dismissal).  The

Court shall admit extrinsic evidence to resolve the ambiguity.  Accordingly, Defendant's motion

to dismiss Plaintiff's claim for breach of contract is DENIED.

## II.    Breach of Covenant of Good Faith and Fair Dealing

A duty of good faith and fair dealing is implied in every contract, such that neither party

"shall do anything which has the effect of destroying or injuring the right of the other party to

receive the fruits of the contract."  *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598

(S.D.N.Y. 2017) (quoting *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)).

The covenant does not "enlarge or create new substantive rights of the parties."  *Ferguson v.*

*Lion Holding, Inc.*, 478 F. Supp. 2d 455, 479 (S.D.N.Y. 2007) (citation omitted).  Therefore,

when a plaintiff's implied-covenant claim is based on the same facts as a breach-of-contract

---

[7] Not every section has a corresponding schedule, but Schedule 6.01(c) in particular appears to have a corresponding provision for every subsection of Section 6.01(c), even if the provision says only "none."  The absence of two subsections is, therefore, notable.

claim, courts dismiss the implied-covenant claim as duplicative. *See Karsch v. Blink Health Ltd.*, No. 17 Civ. 3880, 2021 WL 2075716, at *3 (S.D.N.Y. May 24, 2021); *Houston Cas. Co. v. Paul Ryan Assocs., Inc.*, 348 F. Supp. 3d 363, 364 (S.D.N.Y. 2018); *see also Pro. Merchant Advance Capital, LLC v. C Care Servs., LLC*, No. 13 Civ. 6562, 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015) (inspecting whether "the same damages are sought"). This is the case here: Plaintiff's implied-covenant claim also arises out of Defendant's failure to make the Required Capital Expenditures and seeks the same damages. *See* Compl. ¶¶ 54–55; *id.* at 13.

Accordingly, Defendant's motion to dismiss the implied-covenant claim is GRANTED.

III.     Declaratory Judgment

The Court's discretionary decision to award declaratory judgment turns on "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment will finalize the controversy and offer relief from uncertainty." *Optanix, Inc. v. Alorica Inc.*, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005)). Courts in this Circuit "routinely dismiss requests for declaratory judgment when the parties' rights will be adjudicated through a breach of contract claim in the same action." *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14 Civ. 7483, 2017 WL 3432073, at *17 (E.D.N.Y. Aug. 8, 2017) (collecting cases); *accord EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018). Plaintiff argues that a declaratory judgment is necessary to determine whether it properly presented an indemnification demand after Defendant's alleged breach. Pl. Opp. at 13. But the presentation of an indemnification demand is part of Plainitff's obligations under the Agreement and, therefore, will be resolved through the breach-of-contract claim. *See* Def. Reply at 9; Compl. ¶ 47.

Because a declaratory judgment would not clarify any uncertainty, Defendant's motion to dismiss the declaratory-judgment claim is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.  The Clerk of Court is directed to terminate the motions at ECF Nos. 29, 35, and 41.

SO ORDERED.

_____
ANALISA TORRES
United States District Judge

Dated: January 11, 2024
      New York, New York